The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: August 28 2014

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| In Re: | ) | Case No. 13-33816 |
|---|---|---|
| | ) | |
| William C. Aubiel, | ) | Chapter 7 |
| | ) | |
| | ) | |
| Debtor. | ) | JUDGE JOHN P. GUSTAFSON |

### MEMORANDUM OF DECISION AND ORDER REGARDING OBJECTION TO CLAIM OF HOMESTEAD EXEMPTION IN 46' SEARAY BOAT

This case is before the court on the Objection of Chapter 7 Trustee Louis Yoppolo to the Debtor's claim of a homestead exemption in a 46 foot Sea Ray boat. [Doc. #10]. An evidentiary hearing was held on July 21, 2014. William C. Aubiel [hereinafter "Debtor" or "Mr. Aubiel"], Debtor's counsel, and the Chapter 7 Trustee appeared in person at the hearing.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. §1334(a) as a case under Title 11. Bankruptcy cases are referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. The Objection to the Debtor's Claim of Exemption is a core proceeding that this court may hear and determine. 28 U.S.C. §157(b)(1) and (b)(2)(B). For the reasons that follow, the Chapter 7 Trustee's Objection will be sustained.

The Debtor filed for relief under Chapter 7 on September 13, 2013. [Ex. 1] The Chapter 7 Petition lists "2035 First Street, Pier A Dock 9, Sandusky, OH" in Erie County as the debtor's residence. [*Id*.]. That is the address where the Debtor's 46 foot Sea Ray boat is docked.

The boat is listed on Schedule B, Question 26, as: "residential boat 46 foot 1988 SeaRay Boat"[1]. [*Id*., at p. 17 of 41]. The Sea Ray boat is titled in Debtor's name. [Ex. 6]. Schedule C lists the "residential boat 46 foot 1988 SeaRay Boat" as property being claimed as exempt under Ohio's homestead exemption, O.R.C. §2329.66(a)(1)(B). [*See*, Ex. 1, p. 19 of 41].

The Chapter 7 Trustee filed a timely Objection to the claim of exemption and moved for turnover of the the Sea Ray boat. [Doc. #10].

At the Evidentiary Hearing on the Trustee's Objection to Exemption and Motion for Turnover of SeaRay[2] Boat, the Trustee called the Debtor to the stand and reviewed the Schedules and Statement of Financial Affairs. The Trustee noted a number of items of property that were not disclosed in the documents that were initially filed, including oil and gas leases [Exs. 14 & 15], a knife and gun collection, two life insurance policies, and a 1969 boat, all of which were not listed on Debtor's Schedule B. The Trustee also reviewed a number of payments to insiders that contradicted the Statement of Financial Affairs, Question 3(c), where the Debtor had checked the box for "none". Similar questions were asked about Statement of Financial Affairs, Question 10a, where the box was checked "none", and the Debtor admitted that several parcels of real estate had been transferred within two years prior to filing. *See*, Exhibits 11, 12 & 13.

The Debtor was also asked about the income and expenses listed on Schedules I and J. [Ex. #1]. The Debtor testified that he had no income, other than Social Security, at the time of filing, but had begun driving a truck after filing. At some point after his mining business had collapsed, and before he began truck driving, the Debtor stated that he had been in school in Indiana.

The Trustee questioned the expenses on Schedule J, specifically the expense of $860 a month for "rent or home mortgage payment". The Debtor stated that he "did not know what that is". Mr. Aubiel stated that he paid between $7,000 and $8,000 each year to dock his boat. The Debtor could also not explain the $310 per month listed on Schedule J, Line 2a for electricity and heat. He stated that utilities were

---

[1]/ The title to the Sea Ray boat reflects a manufacture date of 1987, and a length of just over 50 feet. Any discrepancies do not appear to be material.

[2]/ The pleadings generally refer to the boat as a "SeaRay". The manufacturer calls itself "Sea Ray".

2

included as part of the dockage fees. The Debtor was also questioned about the cost of insurance, listed on Schedule J, Line 11d as $350 each month. Mr. Aubiel stated that he actually spent about $100 each month for his auto insurance, and about $600 each year to insure the 46 foot Sea Ray boat.

Finally, the Chapter 7 Trustee went through various documents that reflected the Debtor's address. Specifically, Mr. Aubiel was shown copies of his checking and savings account statements that were sent to his ex-wife's address in Dennison, Ohio from early January of 2013 to November of 2013. [Exs. 10-1 & 10-10]. The Trustee also introduced into evidence the Certificate of Documentation for the Sea Ray boat issued on January 7, 2013, also listing William Aubiel's address as being at the same Dennison, Ohio address, which is located in Tuscarawas County. [Ex. 6]. In addition, the Debtor's 2012 federal income tax return was admitted into evidence as Exhibit 7, showing an address of P.O. Box 152, Uhrichsville, Ohio. Uhrichsville is also located in Tuscarawas County.

Finally, the Debtor was asked to read from an Agreed Judgment Entry of Dissolution in the case of William C. Aubiel, Petitioner, and Kerry I. Aubiel, Petitioner, entered in the Court of Common Pleas of Tuscarawas County, Ohio on July 30, 2012. The first sentence of the first numbered paragraph of the Agreed Judgment Entry states: "1. Both parties have been residents of the state of Ohio and the country of Tuscarawas for at least six (6) months prior to the filing of this action." The Agreed Judgment Entry is signed by William C. Aubiel, William C. Aubiel's domestic relations attorney, and Kerry I. Aubiel, as well as Judge Edward E. O'Farrell. The Agreed Judgment Entry of Dissolution was admitted into evidence as Exhibit 9.

During Mr. Aubiel's testimony, both on examination by the Trustee and his bankruptcy counsel, the Debtor stated that he had lived on the boat for three or four (or more) years. The Sea Ray boat is located in the City of Sandusky, in Erie County, Ohio. Mr. Aubiel stated that he did not live on the boat during the Winter months. The Sea Ray boat is put into storage on or about the 15th of November each year. Debtor stated that while the boat is in storage, he does not live on the boat. No evidence was presented regarding where Mr. Aubiel had lived when he was not able to live on the boat, nor was there any testimony about when he would return to living on the boat when it was taken out of Winter storage.

Upon examination by counsel for the Debtor, Mr. Aubiel stated that he was 68 years old and had been married approximately 37 years prior to his divorce. He had invested $250,000 from his retirement account in an attempt to save Valley Mining, Inc. (hereinafter "Valley Mining"), a company started by his

3

father-in-law. Schedule B shows that Mr. Aubiel asserted a 47% ownership interest in Valley Mining and states that he was the President of the corporation. Debtor testified that he is a high school graduate who started working for Valley Mining many years ago, without any management experience. He stated that after loaning the company money to purchase equipment in an attempt to continue operations, he visited Valley Mining's operations approximately once a week, conducting most of the business from the Sea Ray boat via the marina's fax machine.

Mr. Aubiel further testified that he was taking Xanax, Ativan and blood pressure medication. He also attempted to explain some of the evidence the Trustee had presented about his use of addresses other than the Sea Ray boat, and the misstatements on the Schedules and Statement of Financial Affairs regarding his property and the pre-Petition transfers. He stated that the mailed checking and savings account statements [Exs. 10-1 & 10-10] were not something he looked at because the information was available to him on-line. Further, Mr. Aubiel described his divorce as not being a hostile one. The unlisted oil and gas leases [Exs. 14 & 15] were not being actively used by the lessee, so there were no royalties being generated. The gun and knife collection was not very valuable, and had mostly been received as gifts. Mr. Aubiel stated that he had relied upon his memory in preparing the information for the Schedules and Statement of Affairs, and his ex-wife had been the one who kept books and records.

Counsel for Mr. Aubiel introduced an envelope from a letter Debtor had received from Kerry Aubiel, addressed to William C. Aubiel, care of the Venetian Marina, the location where the Sea Ray boat is docked. The envelope reflects a post mark of July 17, 2014. [Ex. A]. The other exhibit introduced on behalf of the Debtor was a bill for auto insurance, which reflected a mailing date of May 4, 2014. [Ex. C]. The auto insurance bill was mailed to William Aubiel, and reflected a P.O. Box address in Berlin Hts., Ohio. Mr. Aubiel stated that P.O. Box was approximately 15 minutes from the boat, and that was how he received his mail as he was often away from home as a long distance trucker.

### LAW AND ANALYSIS

In *Taylor v. Freeland & Kronz*, the United States Supreme Court provided the following regarding the procedure for claiming exemptions:

> When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate. *See* 11 U.S.C. §541. The Code, however, allows the debtor to prevent

4

the distribution of certain property by claiming it as exempt. Section 522(b) allowed Davis to choose the exemptions afforded by state law or the federal exemptions listed in §522(d). Section 522(1) states the procedure for claiming exemptions and objecting to claimed exemptions as follows:

> "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt."

Although §522(1) itself does not specify the time for objecting to a claimed exemption, Bankruptcy Rule 4003(b) provides in part:

"The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) ... unless, within such period, further time is granted by the court."

*Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 1647, 118 L. Ed. 2d 280 (1992); *see also*, 4 Collier On Bankruptcy ¶522.05[1], at 522-31 (16th ed. 2013).

Under 11 U.S.C. §522(b)(1), Ohio has opted out of the federal bankruptcy exemptions established under 11 U.S.C. §522(d). *See*, Ohio Rev. Code §2329.662. Bankruptcy debtors are, therefore, entitled to those exemptions allowed by Ohio law. On March 27, 2013, the Ohio Exemption Statute was amended by Ohio House Bill 470 to dramatically increase the Ohio homestead exemption to $125,000. Ohio Rev. Code §2329.66(A)(1)(b). Shortly thereafter, the amount of the homestead exemption was increased to $132,900.00 based on a cost of living adjustment.[3] Because the Debtor filed his petition on September 13, 2013, after the Ohio exemption statute was amended, if the Debtor's claim of a homestead exemption in the Sea Ray boat is allowed, the entire $60,000 listed value of the boat would be exempt.

Under Ohio law, exemptions are to be liberally construed in favor of the debtor. *See*, *Daugherty v. Central Trust Co. of Northeastern Ohio, N.A.*, 28 Ohio St.3d 441, 446, 504 N.E.2d 1100, 1105 (Ohio 1986). However, the *Daugherty* court noted: "As in other instances of statutory interpretation, even a liberal construction of R.C. 2329.66 does not give us license to enlarge this statute or strain its meaning. We have made it clear that " * * * [b]y 'liberal construction' is not meant that words and phrases shall be given an unnatural meaning, or that the meaning shall be * * * expanded to meet a particular state of facts." *Id.*, at

---

[3]/ The $132,900 figure does not presently appear as part of the official text of O.R.C. Section 2329.66(A)(1)(b). The actual figure is immaterial here. Either amount - $125,000 or $132,900 - exceeds the $60,000 value of the Sea Ray boat.

13-33816-jpg    Doc 109    FILED 08/28/14    ENTERED 08/28/14 16:27:00    Page 5 of 11

447, *citing, Dennis v. Smith*, 125 Ohio St. 120, 124, 180 N.E. 638 (Ohio 1932); *Morris Plan Bank v. Viona*, 122 Ohio St. 28, 170 N.E. 650. (Ohio 1930).

As the objecting party, the burden is on the Trustee to establish by a preponderance of the evidence that the Debtor's homestead exemption is not properly claimed. Fed. R. Bankr.P. 4003(c); *In re Wengerd*, 453 B.R. 243, 246 (6th Cir. BAP 2011); *In re Zingale*, 451 B.R. 412, 416 (6th Cir. BAP 2011); *In re Frederick*, 495 B.R. 813, 816 (Bankr. N.D. Ohio 2013); *In re Andrews*, 301 B.R. 211, 213 (Bankr. N.D. Ohio 2003).

Section 2329(A)(1)(b) of the Ohio Revised Code states:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

* * * * * *

(b) In the case of all other judgments and orders, the person's interest, not to exceed one hundred twenty-five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.

The term "residence" is not defined in O.R.C. Chapter 2329 of the Ohio Revised Code. *Meadow Wind Health Center, Inc. v. McInnes*, 2000 WL 1055938, 2000 Ohio App. LEXIS 3415 (Ohio App. July 24, 2000). But, courts have interpreted the language "uses as a residence" to mean that the property must be occupied and used as a home. *In re Kimble*, 344 B.R. 546, 555 (Bankr.S.D.Ohio 2006); *In re Flegner*, 2011 WL 5056994, 2011 Bankr. LEXIS 4118 (Bankr. N.D. Ohio Oct. 24, 2011).

As stated by the Ohio Supreme Court:

The term 'homestead' therefore contemplates occupancy as a dwelling place, and therefore in order to hold a dwelling place as a 'homestead' it must at some time have been occupied as a home by one who claims the benefit of the exemption.

*Mut. Bldg. & Invest. Co. v. Efros*, 152 Ohio St. 369, 373, 40 O.O. 389, 89 N.E.2d 648, 650 (1949) (interpreting Ohio's prior exemption statute, Section 11663–1 of the General Code).

The relevant time frame for determining whether a Chapter 7 debtor has the right to claim a homestead exemption is the date of filing. *See, In re Wengerd*, 453 B.R. 243, 247-251 (6th Cir. 2011); *In re Kyle*, 510 B.R. 804, 809-910 (Bankr. S.D. Ohio 2014); *In re Pier*, 310 B.R. 347, 354 (Bankr. N.D. Ohio 2004); *In re Cope*, 80 B.R. 426, 427-428 (Bankr. N.D. Ohio 1987); *and see, White v. Stump*, 266 U.S. 310, 313 (1924)("When the law speaks of property which is exempt and of rights to exemptions, it of course

6

refers to some point of time.... [O]ne common point of time is intended and that is the date of the filing of the petition.").

Courts have struggled with homestead exemption claims that have not involved traditional dwellings. *See generally*, *In re Norris*, 413 F.3d 526, 529-530 (5th Cir. 2005)[4]; *In re Schumacher*, 400 B.R. 831 (Bankr. M.D. Fla. 2008)(motor home); *In re Yettaw*, 316 B.R. 560 (Bankr. M.D. Fla. 2004)(motor home); *In re Irwin*, 293 B.R. 28 (Bankr. D. Ariz. 2003)(motor home).

It does not appear that any Ohio court has directly addressed the issue of a homestead exemption claim on a boat.

The language of the Ohio exemption statute eliminates some of the issues that arise in construing the homestead exemption statutes in other states.[5] Section 2329.66(A)(1)(b) allows an exemption in either "one parcel or item" of either "real or personal property". *See*, *In re Lynch*, 187 B.R. 536, 545-546 (Bankr. E.D. Ky. 1995)(discussing the breadth of Ohio's homestead exemption provision and listing "houseboat" among the possibilities). Thus, unlike the exemption provisions in some other states, in Ohio a homestead exemption can be claimed in an item of personal property that is occupied and used as a home.

However, recognizing the possibility that a boat may be a homestead under Ohio law does not mean that such a claim does not require something more, in the way of proof, than a more conventional dwelling place. The Ohio exemption statute has a "wild card" provision, with much lower dollar limits, that can be applied to any property owned by a debtor. *See*, §2329.66(A)(18). Thus, the Ohio homestead exemption should be applicable only to an item of property that qualifies - it cannot be intended as a larger, second "wild card" exemption provision.

In dealing with homestead exemption claims on non-traditional dwellings, Florida courts have adopted a six part factual analysis in determining whether or not a homestead exemption may be claimed:

---

[4]/ *In re Norris* cites cases involving non-traditional dwellings and certified the question of whether or not a boat can be a homestead under Texas law. The Texas Supreme Court held: No. *Norris v. Thomas*, 215 S.W.3d 851 (Tex. 2007).

[5]/ Cases interpreting other states' exemption provisions have split on whether a homestead exemption can be taken in a boat. *See e.g.*, *In re Herd*, 176 B.R. 312 (Bankr. D. Conn. 1994)(allowing exemption, even though occupancy allegedly violated state law); *In re Ross*, 210 B.R. 320 (Bankr. N.D. Ill. 1997)(allowing homestead exemption in fishing boat); *In re Scudder*, 97 B.R. 617 (Bankr. S.D. Ala. 1989)(debtor's houseboat qualified for homestead exemption); *In re McMahon*, 60 B.R. 632 (Bankr. D. Ky. 1986)(homestead exemption allowed in houseboat); *In re Mead*, 255 B.R. 80 (Bankr. S.D. Fla. 2000)(allowing homstead exemption in boat, but citing four Florida bankruptcy decisions - *Walter, Major, Brissont* and *Andiorio* - all denying homestead exemption claims on boats); *Norris v. Thomas*, 215 S.W.3d 851 (Tex. 2007)(on certified question from 5th Circuit Court of Appeals, Texas homestead exemption did not apply to boats).

1) The debtor's intent to make the nontraditional abode his homestead;

2) Whether the debtor has no other residence;

3) Whether the evidence establishes continuous habitation;

4) Whether the debtor maintains at least a possessory right associated with the land, establishing a physical presence. (Actual land ownership not being required.)

5) Whether the nontraditional abode has been physically maintained to allow long-term habitation versus mobility;

6) Whether the physical configuration of the abode permits habitation, otherwise the physical characteristics are immaterial.

*See*, *In re Yettaw*, 316 B.R. 560, 562-563 (Bankr. M.D. Fla. 2004)(citing cases for the listed criteria); *see also*, *In re Schumacher*, 400 B.R. 831, 835-836 (Bankr. M.D. Fla. 2008)(applying the criteria to a mobile home).

The court does not adopt these factors for use in deciding Ohio exemption claims. However, they do serve to help focus the inquiry on the differences between a homestead claim on a dwelling built for a residential purpose, and nontraditional dwellings that were not built for that purpose.[6]

Here, the Debtor testified that he resided in the boat for several years, but that is contradicted by the documentary evidence introduced by the Trustee. The question of whether or not the Debtor has no other residence was similarly disputed. In addition to the documentary evidence of another residence submitted by the Trustee, the Debtor admitted that he did not maintain continuous habitation, leaving the Sea Ray boat when it was taken out of the water in mid-November each year. The Debtor maintains a possessory right in the dock space, but there was no evidence presented that the boat did not remain "mobile".[7] Finally, there was very little testimony or other evidence presented about the physical layout of the boat, and how the Debtor used the boat as his residence. There was no testimony about whether or not the household goods listed on Schedule B were on the boat, the physical dimensions of the living space, the amenities, or how the Debtor was able to take care of his daily needs on the Sea Ray boat, other than asserting that he used

---

[6]/ It is doubtful that the Ohio Supreme Court, if it were to adopt a "factors" analysis for non-traditional dwellings, would utilize all of the elements listed in the Florida decisions. Because exemptions are to be construed liberally in favor of the debtor, and because personal property is specifically mentioned in the homestead statute, it is doubtful that Ohio courts would include factors that would restrict a homestead exemption in personal property, like factors 4 and 5, above.

[7]/ Both of these factors are of dubious relevance in Ohio, as discussed in footnote 6.

8

the a marina fax machine to conduct business.

Moreover, the statement regarding residency in the Agreed Judgment Entry of Dissolution [Ex. 9] creates a significant legal problem for the Debtor's position. In the Agreed Judgment Entry, signed by the Debtor and entered by the state court, stated that the Debtor lived in Tuscarawas County, not Erie County where the boat is located. The Sixth Circuit Court of Appeals has applied the judicial estoppel doctrine to bar a party from asserting a position that is contrary to the one that the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition. *See*, *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010)(*quoting*, *Browning v. Levy*, 283 F.3d 761, 775–76 (6th Cir. 2002)); *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir.2008). The party seeking estoppel must also show that the assertion of the contrary position was not done out of "inadvertence or error," *Browning*, 283 F.3d at 776. Courts must apply judicial estoppel with caution so as to "avoid impinging on the truth-seeking function of the court." *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

In *Javery v. Lucent Technologies, Inc. Long Term Disability Plan for Management or LBA Employees*, 741 F.3d 686, 698 (6th Cir. 2014), the appellate court excused the failure to list a claim in a Chapter 13 case as an "inadvertent error". Here, the inconsistent position is not based on omission, but rather an affirmative statement signed by the Debtor. Accordingly, it is harder to credit a claim that the specific statement that the Debtor had lived in Tuscarawas County for the previous six months was due to an inadvertent error.

Judicial estoppel has been dispositive in a case involving the claim of a homestead exemption in a non-traditional dwelling. The court in *In re Pich* held that a debtor seeking to claim a homestead exemption in a 9,744 square foot building originally constructed to house operations of his business was judicially estopped from claiming the exemption. *In re Pich*, 253 B.R. 562 (Bankr. D. Idaho 2000). Judicial estoppel arose from the inconsistent position taken in the application for rezoning approval, which omitted the intent to reside and sought a "light industrial" classification which expressly excluded residential uses. *Id.*, at 568.

Again, the contradiction here is even more direct. The Agreed Judgment Entry of Dissolution affirmatively states, on the front page, in the first numbered paragraph, that the Debtor had lived in Tuscarawas County for at least the previous six months. Tuscarawas County is located approximately 100 miles from Erie County, where the Sea Ray boat is located. The Entry reflects that the Debtor was

represented by counsel, and it bears his signature.

Accordingly, the court finds that judicial estoppel should apply to the statement regarding where the Debtor had lived during the six months prior to the execution of the Agreed Judgment Entry of Dissolution. If judicial estoppel applies, the Debtor is precluded from controverting the facts set forth in the Agreed Judgment Entry of Dissolution, specifically that Tuscarawas County was his residence for the six months prior to July 30, 2012, a little more than a year prior to the filing of the Chapter 7 bankruptcy. The evidence Debtor presented at the Hearing, of continuous residence on the Sea Ray boat in Erie County for three or more years, is inconsistent with the position he took in his dissolution proceeding, that he resided in Tuscarawas County. Debtor did not present evidence, other than his testimony that the boat had been his residence for three or more years, that he used the boat as his residence after July 30, 2012 and before the date he filed bankruptcy on September 13, 2013.

In the alternative, even if the Agreed Judgment Entry of Dissolution is not sufficient to invoke judicial estoppel, either because the statement was somehow an inadvertent mistake or the assertion in the dissolution Entry can be reconciled with Debtor's testimony in some way[8], the Entry still remains strong evidence that the Debtor did not reside in Erie County at the time Agreed Judgment was entered. The evidence from the Entry of Dissolution has to be coupled with the other evidence presented by the Trustee that supports a finding that Debtor did not occupy and use the boat as his home. That evidence includes the Debtor's bank account information that was being sent to a Tuscarawas County address from January, 2013 until filing, and the fact that his 2012 tax return reflects a P.O. Box address located in Tuscarawas County. The evidence also includes the language of the three undisclosed quit claim deeds, executed in July of 2012 and recorded in July, 2013, all of which state that William Aubiel is "of Tuscarawas County." These documents all directly contradict William Aubiel's testimony that for three or four years, his residence was the Sea Ray boat located in Erie County, Ohio.

In addition, the Trustee presented evidence that Debtor's listed expenses did not appear to relate to the costs associated with the boat. There was no contrary evidence presented by the Debtor as to how the living expenses listed on Schedule J, particularly the $860 a month for rent or mortgage payment and the $310 a month for electricity and heat, were applicable to the use of the Sea Ray boat as a residence. Further,

---

[8]/ At the Hearing, no evidence or argument was presented attempting to reconcile the statement in the Agreed Judgment Entry of Dissolution with Debtor's narrative regarding his living situation during the relevant time periods.

10

there was a discrepancy between the expenses claimed for insurance in the Schedules, and the insurance expenses Debtor testified to that related to the Sea Ray boat and his vehicle.

The weight to be given to Mr. Aubiel's testimony regarding where he resided is diminished by the inaccuracies in his Chapter 7 Schedules and Statement of Financial Affairs, which were signed under penalty of perjury. Further, the evidence offered by Mr. Aubiel at the Hearing was not relevant to the question of whether he was using the Sea Ray boat as his residence at the time of filing in September of 2013.[9] The letter from Kerry Aubiel to William Aubiel, in care of the Venetian Marina, is post marked July 17, 2014. The auto insurance bill that was mailed to a post office box near the marina states that it was generated on May 4, 2014. The Chapter 7 Trustee filed his objection to the Debtor's claim of exemption in December of 2013, months before these two pieces of correspondence were mailed.

Thus, even under just a preponderance of the evidence standard, without consideration of judicial estoppel, the evidence presented by the Trustee was stronger and more persuasive.

Accordingly, the Chapter 7 Trustee has met his burden of proving by the preponderance of the evidence that the Sea Ray boat was not the Debtor's residence at the time of filing, and that the Ohio homestead exemption cannot be claimed on that vessel. However, it appears that the Debtor may not have claimed the full amount of his Ohio "wildcard" exemption under 2329.66(a)(18).

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Chapter 7 Trustee's Objection To Debtor's Claim of Exemption is **SUSTAINED**.

**IT IS FURTHER ORDRED** that the Chapter 7 Trustee's Motion for Turnover of Searay Boat be, and is hereby, **GRANTED**.

**IT IS FURTHER ORDERED** that any additional claim of exemption on the Sea Ray boat by the Debtor shall be filed within 14 days.

---

[9]/ Actual occupancy on that date is not the dispositive issue if residence has been established, and the property has not been abandoned. *See*, *In re Wengerd*, 453 B.R. 243, 248 (6th Cir. BAP 2011), *citing*, *In re Cope*, 80 B.R. 426 (Bankr. N.D. Ohio 1987).

11